IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BRANDON JAMAL RYLES, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JEFFERSON S. DUNN, *et al.*, )<br>)<br>Defendants. ) | Case No. 2:18-cv-569-ECM-SMD<br>[WO] |

### **RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the court is Alabama inmate Brandon Jamal Ryles's petition for writ of habeas corpus under 28 U.S.C. § 2254. Doc. 1. Ryles challenges his 2014 Pike County convictions for two counts of felony murder and his resulting sentence of life in prison. For the following reasons, the undersigned Magistrate Judge RECOMMENDS that Ryles's petition be DENIED without an evidentiary hearing and that this case be DISMISSED WITH PREJUDICE.

I.  **BACKGROUND**

   A.  **Procedural History**

In October 2011, a Pike County grand jury indicted Ryles for two counts of capital murder in violation of ALA. CODE. § 13A-5-40(a)(2) (murder during a robbery) and one count of capital murder in violation of ALA. CODE. § 13A-5-40(a)(10) (murder of two or more persons during one course of conduct), for Ryles's part in the murders of Mark Adams and Carla Smilie. Doc. 6-2 at 1–4. Ryles's case went to trial in September 2014. On September 15, 2014, the jury found Ryles guilty of two counts of felony murder in violation

of ALA. CODE. § 13A-6-2(a)(3), a lesser-included offense of capital murder. Doc. 6-5 at 1. On October 30, 2014, the trial court sentenced Ryles to consecutive terms of life imprisonment. Doc. 6-9.

Ryles appealed, arguing that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to turn over to the defense in a timely fashion a recording of an allegedly exculpatory telephone conversation between Ryles, his codefendant Marquisse McClaney, and an unidentified female.[1] Doc. 6-16. On December 9, 2016, the Alabama Court of Criminal Appeals affirmed Ryles's convictions in a memorandum opinion finding that the recorded telephone conversation was not "material" evidence under *Brady*. Doc. 6-19. Ryles applied for rehearing, which was overruled. Docs. 16-20, 16-21. On March 10, 2017, the Alabama Supreme Court denied Ryles's petition for writ of certiorari. Docs. 16-22, 16-23.

On June 8, 2018, Ryles, represented by counsel, initiated this habeas action by filing a § 2254 petition reasserting the *Brady* claim he presented on direct appeal. Docs. 1, 2. Respondents argue that the state courts correctly denied relief. Doc. 6.

**B.     The Crime**

The Alabama Court of Criminal Appeals, in its memorandum opinion affirming Ryles's convictions on direct appeal, summarized the evidence adduced at trial. The court quotes from that memorandum opinion:

> The evidence at trial revealed that on April 4, 2011, Mark Adams and Carla Smilie were murdered inside Adams's mobile home and that three firearms were stolen from his residence. Police were able to identify a man

---

[1] The female participant in the phone conversation was identified only as "Vangela."

2

named John Foster as a suspect in the murders. Three other men were also implicated in the crime including Ryles and another individual named Marquisse McClaney.

Further testimony revealed that both victims had been shot and stabbed. Forensic investigators testified that at least two separate firearms were used in the murders. Sergeant Brian McClendon, a detective with the Troy Police Department, testified that he and other officers investigated the crime scene, identified Foster as a suspect, and ultimately arrested Foster and conducted an interview with him. According to Detective McClendon, Foster confessed to killing the victims and taking the firearms from the residence. (R. 1638.) McClendon also testified that Foster implicated Ryles in the crime as well. Over defense counsel's objection, the following exchange occurred:

> "[Prosecutor]: The question is, did John Foster indicate to you that anybody else, including Brandon Ryles, shot or stabbed anybody on the night of March (sic) the 4th, 2011?
>
> "[McClendon]: Yes, sir.
>
> "[Prosecutor]: Who did he indicate?
>
> "[McClendon]: He advised that Brandon [Ryles] shot [Adams] with a shotgun and then went up and started stabbing him and then stabbed Carla."

(R. 1644–45.)

Marquisse McClaney testified that he was with Foster and Ryles on the night Adams and Smilie were killed. McClaney stated that the men were smoking marijuana while driving around in Ryles's mother's vehicle on the day of the murder. McClaney testified that, at Foster's request, Ryles drove to Adams's trailer so that Foster could collect money that Adams allegedly owed to him. McClaney testified that Foster went inside Adams's mobile home for a short period of time. When Foster came back to the vehicle, he told Ryles and McClaney that the people inside were "getting f'ed up." (R. 2528.) According to McClaney, Ryles and Foster then stated that they wanted to "hit a lick," which he understood to mean that they wanted to commit a robbery. (R. 2529.)

McClaney testified that he served as a lookout while Foster and Ryles went inside the mobile home. McClaney stated that Foster took a shotgun from Ryles's vehicle, went inside the trailer, and began shooting the people

3

inside. According to McClaney, Ryles followed Foster inside and stabbed Carla Smilie multiple times with a knife. McClaney testified that Ryles and Foster then pulled Adams's body from the chair he was sitting in and took his wallet out of his pocket. McClaney also stated that Foster gathered some of Adams's firearms and took them out of the trailer.

McClaney further testified that it began to storm as the men made their getaway. While en route to McClaney's house, their vehicle collided with a fallen tree that caused the front tires to blow out. They were unable to move the vehicle and had to call Foster's stepfather to come and get them. McClaney stated that, before Foster's stepfather arrived, Foster threw all of the guns into the woods because he was on probation and "couldn't be around no guns." (R. 2540.) Police later recovered the firearms as well as a knife from the location that McClaney described.

During McClaney's testimony it became clear that he had given several different accounts of what happened the night Adams and Smilie were killed. When he was initially questioned by police, McClaney denied any knowledge of the incident. (R. 2548–49.) When McClaney was questioned a second time, he told police a story that was consistent with the testimony he gave at trial. (R. 2549.) Later, while McClaney was incarcerated, he wrote a letter addressed to "whoever that matter" in which he stated that Foster acted alone in killing Adams and Smilie. (C. 3935–36.) In that letter, McClaney stated that he had only implicated Ryles because Foster threatened to hurt him and his family if he did not. However, at trial, McClaney testified that he wrote the letter implicating Foster because Ryles had threatened him. McClaney maintained that his testimony at trial, in which he implicated both Foster and Ryles, was the truth.

McClaney also testified that he gave a sworn deposition to Ryles's attorneys in which he stated that Foster acted alone and that Ryles remained in the vehicle, unaware of what was about to happen. That story was consistent with the story he told in the above-mentioned letter. A transcript of McClaney's deposition was admitted into evidence. (C. 4102–32.) However, at trial, McClaney stated that, although under oath at the time, he lied in his deposition.

Ryles testified in his own defense at trial. Ryles admitted that he drove McClaney and Foster to Adams's residence on the night of the murders. According to Ryles, Foster wanted to go to Adams's mobile home to collect money that Adams allegedly owed him. Ryles testified that Foster went inside for a brief period of time and that when he returned to the vehicle, he was carrying three firearms. Ryles stated that Foster told them that Adams

4

> had given him the guns as collateral because he did not have any money. Ryles denied any knowledge of the murders that night. As noted, the jury acquitted Ryles of the three capital-murder charges but found him guilty of two lesser-included counts of felony murder.

Doc. 6-19 at 1–4 (footnotes omitted; page references to record on direct appeal).

## II. AEDPA STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") modified the federal courts' role in reviewing state prisoner habeas applications to prevent "federal habeas 'retrials'" and to ensure that state court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. 685, 693 (2002). For a claim adjudicated on the merits by the state courts and properly before the federal court, a writ of habeas corpus shall be granted only if the prior adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" federal law under § 2254(d)(1) "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell*, 535 U.S. at 694. Under the "unreasonable application" standard, this court may grant a writ only if the state court identified the correct governing federal legal principle but applied that principle to the facts of a petitioner's case in an objectively unreasonable way. *See*

5

*Williams v. Taylor*, 529 U.S. 362, 411–13 (2000) (O'Connor, J., delivering the opinion of the Court with respect to Part II). "Objectively unreasonable" means something more than an "erroneous" or "incorrect" application of clearly established law, and a reviewing federal court may not substitute its judgment for the state court's even if the federal court, in its own independent judgment, disagrees with the state court's decision. *See Lockyer v. Andrade*, 538 U.S. 63, 76 (2003). The reviewing court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Harrington v. Richter,* 562 U.S. 86, 102 (2011).

      The Supreme Court has reemphasized this deferential standard, holding that "[t]he state court decision must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citation omitted). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

      As for the unreasonable-determination-of-facts prong under § 2254(d)(2), the federal court "may not characterize these state court factual determinations as unreasonable 'merely because [we] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain,* 576 U.S. 305, 313–14 (2015) (citation omitted). "If [r]easonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's . . . determination." *Id*. at 314 (quotation

marks and citations omitted). Factual issues made by a state court are presumed correct, and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. DISCUSSION OF RYLES'S *BRADY* CLAIM

Ryles argues that the State violated *Brady* by failing to turn over to the defense in a timely fashion a recording of an allegedly exculpatory telephone conversation between Ryles, his codefendant Marquisse McClaney, and a female identified as "Vangela." Doc. 1, 2. The Alabama Court of Criminal Appeals' memorandum opinion in Ryles's direct appeal summarized the circumstances and contents of the recorded phone conversation:

> Before Ryles's trial began, McClaney made a telephone call to a female identified as "Vangela" while he was incarcerated. (C. 3708.) That telephone conversation was recorded by prison officials and was later given to prosecutors. In the conversation, Vangela told McClaney that she had been in contact with Ryles and Ryles's attorneys. She told McClaney that he was "going to have to take back what [he] said." (C. 3709.) According to Vangela, Ryles's attorneys told her that they could get McClaney out of prison if McClaney would testify that Ryles was not involved in the murders. Vangela stated that Ryles's attorneys "said the only way they can help you is if you back out of it." (C. 3709–10.) She further explained that Ryles's attorney stated that "as soon as they can get [Ryles] out, they gonna get you out, but they can't help you if you don't take it back." McClaney assured Vangela that he did not plan on testifying against Ryles. According to McClaney, he felt pressured by his attorney and his family to accept a plea deal and testify against Ryles. However, McClaney told Vangela that the testimony the State wanted him to give at trial was not true.
> 
> Vangela then called Ryles using a three-way calling feature. When Ryles came into the conversation, he stated the following to McClaney: "Hey, hey, boy. You better do the right thing. But we coming to get you now." Ryles then told McClaney to "go on and back out of that shit now." (C. 3720.) McClaney went on to assure Ryles that he was not going to testify against him at trial and that he only told police that Ryles was involved because police led him to believe that Ryles and the other men involved had implicated him.

7

Doc. 6-19 at 4–5 (footnote omitted; page references to record on direct appeal).

The recorded telephone conversation took place in late August 2014, approximately two weeks before Ryles's trial, while Ryles was being held at the Pike County Jail and McClaney was incarcerated at the Kilby Correctional Facility. Docs. 6-7, 6-28; Doc. 6-10 at 20; Doc. 6-34 at 5. The record indicates that the State learned of the recording on the evening of September 10, 2014 (after Ryles's trial had begun), and disclosed its existence to the trial court on September 12, 2014, during Ryles's case in chief. Doc. 6-28 at 1. The State provided defense counsel with a copy of the recording on September 12, 2014. *Id*. at 1–2. After he was convicted, Ryles filed a motion for new trial arguing he was entitled to a new trial because he was denied exculpatory evidence—the recorded phone conversation—in violation of *Brady*. Doc. 6-10 at 20–27. The motion for new trial was denied by operation of law.

Under *Brady*, the State must disclose to the defense any material exculpatory evidence in the State's possession. 373 U.S. at 87. A new trial is warranted when there is a reasonable probability that disclosure of undisclosed evidence would have altered the outcome of the case. *United States v. Bagley*, 473 U.S. 667, 674–76 (1985). Exculpatory *Brady* information relates to "evidence which directly tends to lessen a defendant's guilt, e.g., a statement from another person which tends to relieve the defendant of responsibility for the crime." *United States v. Hopkins*, 2008 WL 4453583, at *2 (E.D. Cal. Oct. 3, 2008). To establish a *Brady* violation, a defendant must prove: "1) that the government possessed evidence favorable to the defense, 2) that the defendant did not possess the evidence and

could not obtain it with any reasonable diligence, 3) that the prosecution suppressed the evidence, and 4) that a reasonable probability exists that the outcome of the proceeding would have been different had the evidence been disclosed to the defense." *Spivey v. Head*, 207 F.3d 1263, 1283 (11th Cir. 2000) (citations omitted).

As he did on direct appeal, Ryles claims the State suppressed the recorded telephone phone conversation in violation of *Brady*. Doc. 1 at 5; Doc. 2. He argues that the recorded conversation was exculpatory because McClaney can be heard telling Vangela that his accusations against Ryles were not true. Doc. 2 at 19–35. Ryles maintains that McClaney's testimony was the only evidence presented at trial that placed Ryles inside the victim's mobile home during the murders.

In examining Ryles's *Brady* claim, the Alabama Court of Criminal Appeals first questioned whether the State had actually suppressed evidence of the recorded phone conversation:

> As to whether the State violated *Brady*, we first question whether the recording in question was suppressed with the meaning of *Brady*. This Court has held that ""'[e]vidence is not 'suppressed' if the defendant either knew . . . or should have known . . . of the essential facts permitting him to take advantage of the exculpatory evidence.'"" Garzarek v.State, 153 So. 3d 840, 850 (Ala. Crim. App. 2013), quoting *Freeman v. State*, 722 So. 2d 806, 811 (Ala. Crim. App. 1998), quoting in turn *Carr v. State*, 505 So. 2d 1294, 1297 (Ala. Crim. App. 1987) (internal quotations and citations omitted). Ryles was a party to the latter portion of the conversation between McClaney and Vangela and was aware that McClaney was incarcerated at the time and that telephone conversations from prisons were recorded. A review of the recording reveals that Ryles knew McClaney was already on the line with Vangela when he was added to the call. Had Ryles informed defense counsel of this conversation in a timely manner, counsel could have independently discovered the recording. Additionally, defense counsel was made aware of the recording during the trial. Counsel could have requested a continuance

9

until they were able to listen to the recording and determine whether it would have been useful to Ryles's case. However, counsel made no such efforts.

Doc. 6-19 at 7–8 (footnote omitted).

However, the Alabama Court of Criminal Appeals found it was unnecessary to decide conclusively if the State had suppressed evidence, because the recorded telephone conversation was not "material" evidence within the meaning of *Brady*:

> Nevertheless, we need not decide that issue [of suppression] because we do not find that McClaney's statements in the recorded conversation were material under *Brady*. "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Johnson v. State*, 612 So. 2d 1288, 1293 (Ala. Crim. App. 1992) (quoting *United States v. Bagley,* 473 U.S. 667, 682 , 105 S. Ct. 3375, 87 L.Ed.2d 481 (1985)). "The same standard of materiality and due process requirements apply whether the evidence is exculpatory or for impeachment purposes." *Garzarek v. State*, 153 So. 3d 840, 848–49 (Ala. Crim. App. 2013) (internal citations omitted). As noted, the jury was well aware of the fact that McClaney had repeatedly changed his story regarding what happened on the night of the murders. McClaney admitted that he had written a letter in which he claimed that Ryles was not involved and also admitted to giving a sworn deposition in which he again stated that Ryles did not go inside the mobile home.
>
> On cross-examination, defense counsel admitted a transcript of McClaney's deposition into evidence and thoroughly questioned McClaney about its contents. Defense counsel reminded McClaney about statements he made in the deposition and then asked whether or not the statement was a lie. McClaney testified that several of his statements in the deposition were not true. After the transcript was admitted, the following exchange occurred:
>
>> "[Defense counsel]: So what you're telling me is, is that two men who came up there to talk to you so that maybe we could save the State taxpayers some money and find out what was the truth—you're just looking at me now, and you're looking at that boy over there and saying you lied under oath to us; is that right?
>>
>> "[McClaney]: Yes, sir."

> (R. 2612.) McClaney's statements to Vangela during their telephone conversation would have therefore been cumulative to testimony that was already before the jury. Accordingly, it is not probable that the outcome of the proceeding would have been different had the jury heard the conversation between McClaney and Vangela.
>
> We also note that Ryles was convicted of the lesser-included offense of felony murder and, therefore, was implicitly acquitted of capital murder. Had the jury believed McClaney's testimony, i.e., that Ryles went into the mobile home with Foster and repeatedly stabbed Smilie, they could have convicted him of capital murder. Thus, the verdict suggests that the jury did not find McClaney's testimony to be credible. Further corroboration of McClaney's lack of veracity would not have changed the outcome of Ryles's trial.
>
> Additionally, there was more evidence, including Ryles's own admissions, establishing that Ryles drove Foster to Adams's mobile home and waited in the vehicle while Adams and Smilie were killed. Foster's fiancée, Latoya Ware, testified that Ryles came to her home looking for Foster on the day of the murders. According to Ware, she became uncomfortable when Ryles stated, "that he don't have nothing to lose. He got discharged from the Army with no money. The girlfriend or the wife at the time had kicked him out, and he had to get some money." (R. 2194.) Thus, the jury could have completely disregarded McClaney's testimony and still convicted Ryles of felony murder. Hearing additional evidence regarding McClaney's credibility would not have impacted the outcome of the proceedings.

Doc. 6-19 at 8–10 (page references to record on direct appeal).

In assessing Ryles's *Brady* claim, the Alabama Court of Criminal Appeals recited the test of materiality from *United States v. Bagley,* 473 U.S. 667, 682 (1985). The Alabama Court of Criminal Appeals' conclusion that the alleged *Brady* evidence was immaterial was based upon its determination that Ryles failed to establish it was "probable that the outcome of the proceeding would have been different had the jury heard the [recorded phone] conversation between McClaney and Vangela." Doc. 6-19 at 9. This standard

11

employed by the Alabama Court of Criminal Appeals applied the test articulated by the Supreme Court in *Bagley*. *See Bagley*, 473 U.S. at 682 ("The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.").

It was a reasonable application of federal law for the Alabama Court of Criminal Appeals to determine that the recorded phone conversation was not material under *Brady*. The Alabama Court of Criminal Appeals was well within its purview to reject Ryles's contention regarding the exculpatory value of the recording. The Court determined that the importance Ryles gave the recording was misplaced because the jury already knew McClaney had changed his story several times, especially when being threatened or pressured by Ryles or persons acting on his behalf. Thus, the Court appropriately found that McClaney's statements to Vangela during the phone conversation would have been merely cumulative to testimony already before the jury. Doc. 6-19 at 9.

The Alabama Court of Criminal Appeals also found Vangela was not, as Ryles claimed, a disinterested third party in the conversation. Instead, she was actively attempting to act on Ryles's and (Ryles's attorneys') behalf during that conversation to persuade McClaney not to testify against Ryles:

> Ryles attempts to distinguish the statement [McClaney] made in the recording [from McClaney's other statements that he was being pressured to falsely implicate Ryles] by claiming it was made to Vangela, who he describes as "a person not associated with Mr. Ryles" and "a disinterested third party." (Ryles's brief, at 30, 33.) However, a review of the recording reveals that Vangela was associated with Ryles and did not appear to be disinterested at all. On several occasions she mentions that she had spoken with Ryles as well as Ryles's attorneys about both Ryles's and McClaney's cases. She tells McClaney that he should not testify against Ryles so that both

12

of the men could get out of jail. At no point in the conversation did McClaney give Vangela Ryles's telephone number or otherwise tell her how to contact Ryles. However, Vangela was able to quickly get Ryles on the telephone despite the fact that Ryles was incarcerated in another institution. Ryles also indicated during their conversation that he had been waiting on the call. It is clear from the recording that Vangela had been in contact with Ryles and Ryles's attorneys and that she was upset with the prospect of McClaney testifying against Ryles. Accordingly, she was not a disinterested third party as Ryles asserts.

Doc. 6-19 at 7. The factual determinations underlying the Alabama Court of Criminal Appeals' conclusion that McClaney's statements during the phone conversation were cumulative and immaterial under *Brady* were not patently unreasonable. 28 U.S.C. § 2254(d)(2). Ryles does not offer clear and convincing evidence that the state court's factual determinations were incorrect. 28 U.S.C. 2254(e)(1). Thus, it is not unreasonable to conclude that the jury would have perceived McClaney's statements to Vangela during the phone conversation as made to placate Vangela (and Ryles). This supports the state court's finding that McClaney's statements during the phone conversation would have been merely cumulative to testimony already before the jury, and it also vitiates the exculpatory value of the phone conversation.

Finally, the record also supports the Alabama Court of Criminal Appeals' finding that there was other evidence, including Ryles's own admissions, establishing that Ryles drove John Foster to Mark Adams's mobile home and waited in the vehicle while Adams and Carla Smilie were killed. Thus, the determination by the state court that the jury could have disregarded McClaney's testimony and still convicted Ryles of felony murder, and that hearing additional evidence regarding McClaney's credibility would not have affected

the outcome of the proceedings, was not an unreasonable application of clearly established federal law, nor was it a decision based on an unreasonable determination of the facts.

For the foregoing reasons, the court finds that presentation to the jury of the recorded telephone conversation would not have created "a reasonable probability" that "the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682. Ryles had a fair trial resulting in a verdict worthy of "confidence." *Id*. Accordingly, the court concludes that the Alabama Court of Criminal Appeals' decision that the State's failure to timely disclose the recorded telephone conversation did not violate Ryles' rights under *Brady* was not an unreasonable application of Supreme Court law.

### IV.   CONCLUSION

Accordingly, the undersigned Magistrate Judge RECOMMENDS that Ryles's § 2254 petition (Doc. 1) be DENIED without an evidentiary hearing and that this case be DISMISSED with prejudice. It is ORDERED that the parties shall file any objections to this Recommendation on or before **June 8, 2021**. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which each objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation, and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d

404 (5th Cir. 1982); 11TH CIR. R. 3-1; *see also Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 25th day of May, 2021.

/s/ Stephen M. Doyle

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE